# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

***

| | |
|---|---|
| BEST ODDS CORP., | 2:13–cv–2008–RCJ–VCF |
| Plaintiff, | |
| vs. | **ORDER** |
| iBUS MEDIA LIMITED, *et al.*, | |
| Defendants. | |

This matter involves a trademark infringement action under the Lanham Trademark Act of 1946, 15 U.S.C. § 1114. Before the court is iBus Media's motion to stay (#31[1]) discovery. iBus Media requests a stay of discovery pending the court's resolution of iBus Media's motion to dismiss or for four months, whichever occurs first. Best Odds opposed (#35); and iBus Media replied (#36). For the reasons stated below, iBus Media's motion is granted.

## BACKGROUND

This is case about two poker websites. Plaintiff Best Odds is a Nevada corporation that provides "news and information via a global computer network in the field of gaming." (Compl. (#1) at ¶ 17). Defendant iBus Media is an Isle of Man corporation that provides "news and information via a global computer network in the field of gaming." (*Id*. at ¶ 20). Best Odds uses the MacPoker® trademark and iBus Media also allegedly uses the MacPoker® trademark. (*Id*. at ¶¶ 21–22). But, Best Odds owns the right to the MacPoker® trademark and iBus Media does not. (*Id*. at ¶ 18).

---

[1] Parenthetical citations refer to the court's docket.

1

On October 29, 2013, Best Odds filed suit under the Lanham Act to end iBus Media's alleged trademark infringement. Now, iBus Media moves for a stay of discovery, arguing, *inter alia*, that its pending motion to dismiss should "convince" the court that it does not have personal jurisdiction over iBus Media. (Def.'s Stay Mot. (#31) at 7). In response, Best Odds argues that "[i]t is frankly unfathomable" that iBus Media would not be subject to this court's personal jurisdiction. (Pl's. Opp'n (#19) at 6:14). Best Odds' contention that iBus Media is subject to this court's personal jurisdiction is primarily predicated on the following statement from iBus Media's media kit:

> While the global site has the largest traffic reach, **with significant U.S. presence**, *PokerNews* is an international force with over 30 sub-domains, each with localized language and content. *PokerNews* sub-domains generate large traffic profiles of their own as demonstrated by NL.PokerNews.com, our site in the Netherlands.

(*Id.*); (*see also* Compl. (#1) at ¶ 9) (citing Exhibit 1 at 4) (emphasis added). Additionally, Best Odds argues that the court has personal jurisdiction over iBus Media because iBus Media (1) competes with Best Odds; (2) "engaged in wrongful acts" targeted at Best Odds; (3) provides news coverage that is accessible to U.S. consumers; (4) acts as the "official live [news] coverage partner" of U.S.-based companies; (5) provides "functionality by which site users may make hotel and other travel reservations in the United States"; and (6) should be subject to personal jurisdiction because it is a foreign entity not subject to courts of general jurisdiction in the U.S.[2]

## LEGAL STANDARD

When evaluating a motion to stay discovery while a dispositive motion is pending, the court initially considers the goal of Federal Rule of Civil Procedure 1. The guiding premise of the Rules is that the Rules "should be construed and administered to secure the just, speedy, and inexpensive

---

[2] Best Odds makes an additional allegation relating to personal jurisdiction (*see* Compl. (#1) at ¶ 13), but it merely repeats without further elaboration its prior allegation that iBus Media should be subject to personal jurisdiction because it committed wrongful acts. (*See id.* at ¶ 8).

determination of every action." FED. R. CIV. P. 1. It needs no citation of authority to recognize that discovery is expensive. The Supreme Court has long mandated that trial courts should resolve civil matters fairly but without undue cost. *Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962). This directive is echoed by Rule 26, which instructs the court to balance the expense of discovery against its likely benefit. *See* FED. R. CIV. P. 26(B)(2)(iii).

Consistent with the Supreme Court's mandate that trial courts should balance fairness and cost, the Rules do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending. *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600–01 (C.D. Cal. 1995). Pursuant to Federal Rule of Civil Procedure 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Whether to grant a stay is within the discretion of the court. *Munoz–Santana v. U.S. I.N.S.*, 742 F.2d 561, 562 (9th Cir. 1984). The party seeking the protective order, however, has the burden "to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." FED. R. CIV. P. 26(c)(1). Satisfying the "good cause" obligation is a challenging task. A party seeking "a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D.Cal.1990) (citing *Blankenship v. Hearst Corp.* 519 F.2d 418, 429 (9th Cir. 1975)).

Generally, imposing a stay of discovery pending a motion to dismiss is permissible if there are no factual issues raised by the motion to dismiss, discovery is not required to address the issues raised by the motion to dismiss, and the court is "convinced" that the plaintiff is unable to state a claim for relief. *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984); *White v. Am. Tobacco Co*., 125 F.R.D. 508 (D. Nev. 1989) (citing *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) cert. denied, 455 U.S. 942 (1982). Typical situations in which staying discovery pending a ruling on a dispositive motion are

appropriate would be where the dispositive motion raises issues of jurisdiction, venue, or immunity. *TradeBay, LLC v. Ebay, Inc*., 278 F.R.D. 597, 600 (D. Nev. 2011).

Courts in the District of Nevada apply a two-part test when evaluating whether a discovery stay should be imposed. *Id.* (citations omitted). First, the pending motion must be potentially dispositive of the entire case or at least the issue on which discovery is sought. *Id*. Second, the court must determine whether the pending motion to dismiss can be decided without additional discovery. *Id*. When applying this test, the court must take a "preliminary peek" at the merits of the pending dispositive motion to assess whether a stay is warranted. *Id*. The purpose of the "preliminary peek" is not to prejudge the outcome of the motion to dismiss. Rather, the court's role is to evaluate the propriety of an order staying or limiting discovery with the goal of accomplishing the objectives of Rule 1.

## DISCUSSION

iBus Media moves for a stay of discovery on several grounds, including the alleged lack of personal jurisdiction. For the reasons stated below, the court agrees with iBus Media that the District Court will most likely dismiss Best Odd's complaint for failure to assert personal jurisdiction over Defendants. Before discussing why Best Odd's complaint fails to confer personal jurisdiction over iBus Media, the court begins its analysis by reviewing the governing law.

### I.    The Law Governing Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows district courts to dismiss an action for lack of personal jurisdiction. The burden of proving jurisdiction rests on the party asserting jurisdiction, *see McNutt v. Gen. Motors Acceptance Corp*., 298 U.S. 178, 182–83 (1936), and the U.S. Supreme Court has long directed lower courts to presume that they lack jurisdiction. *Turner v. Bank of North Am*., 4 U.S. 8, 11, 4 Dall. 8, 11 (1799); *see also Dole Food Co. Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) ("Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear

4

the burden of demonstrating that jurisdiction is appropriate.").

To establish personal jurisdiction over Defendant in Nevada, Plaintiffs have the burden of showing that: (1) the Nevada long-arm jurisdiction statute confers such jurisdiction; and (2) "that the exercise of jurisdiction comports with the constitutional principles of due process." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Where no federal statute authorizes personal jurisdiction, district courts apply the law of the state in which they sit. Fed. R. Civ. P. 4(k)(1)(A); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Nevada's long-arm statute confers jurisdiction "on any basis not inconsistent with the constitution of this state or the Constitution of the United States." Nev. Rev. Stat. § 14.065 (2006). It makes Nevada's jurisdiction coextensive with the limits of federal due process. *Meyers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001).

To comport with constitutional principles of due process, personal jurisdiction exists only where a party has minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). These requirements "give a degree of predictability to the legal system that allow potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Personal jurisdiction may be either general or specific. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1990). General jurisdiction exists when the defendant engages in "continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). Specific jurisdiction may be asserted "if the defendant purposefully directed his activities at residents of the forum, and the

litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (internal quotations omitted).

## II.   The Court Lacks General Jurisdiction over Defendants

The court's analysis starts with the question of whether Defendant's contacts with Nevada are sufficient to confer general jurisdiction. The standard for establishing general jurisdiction is "fairly high." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (quoting *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986)). The contacts with the forum state must "approximate physical presence." *Id*. "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id*. The court's inquiry focuses on the "economic reality" of the defendant's activities rather than a mechanical checklist. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). Even if substantial, or continuous and systematic contacts exist, the assertion of general jurisdiction must be reasonable. *See Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 852–53 (9th Cir. 1993).

In applying the "substantial" or "continuous and systematic" contacts test, courts focus on two areas. First, they look for some kind of deliberate "presence" in the forum state, including physical facilities, bank accounts, agents, registration, or incorporation. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) (finding general jurisdiction when president of a Philippines-based corporation maintained an office, kept company files, held director meetings, distributed salaries, and conducted other company business in the forum state). Second, they consider whether the company has engaged in active solicitation toward and participation in the state's markets (i.e., the economic reality of the defendant's activities in the state). *See Theo. H. Davies & Co. v. Rep. of the Marshall Islands*, 174 F.3d 969, 974–75 (9th Cir. 1998) (finding general jurisdiction over two foreign corporations engaged in

substantial commercial activity in the United States, including purchase and solicitation of bids for generators in Hawaii).

Based on the allegations contained in Best Odds' complaint, the court concludes that it does not have general jurisdiction over iBus Media. Best Odd's complaint predicates personal jurisdiction on seven allegations. (*See* Compl. (#1) at ¶¶ 7–14). These allegations are that iBus Media (1) competes with Best Odds; (2) "engaged in wrongful acts" targeted at Best Odds; (3) stated in a media kit that iBus Media's website has "significant U.S. presence"; (4) provides news coverage that is accessible to U.S. consumers; (5) acts as the "official live [news] coverage partner" of U.S.-based companies; (6) provides "functionality by which site users may make hotel and other travel reservations in the United States"; and (7) should be subject to personal jurisdiction because it is a foreign entity not subject to courts of general jurisdiction in the U.S.[3]

These allegations do not "approximate physical presence." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772, 779 & n. 11, (1984) (finding no general jurisdiction despite circulation of 10,000–15,000 copies of nonresident defendant's magazine in forum per month); *Bancroft & Masters*, 223 F.3d at 1086 ("[E]ngaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders."); *Scott v. Breeland*, 792 F.2d 925, 928 (9th Cir. 1986) (finding the "systematic" sale of records in California by popular country music band from Tennessee insufficient to confer general jurisdiction).

Indeed, none of Best Odd's jurisdictional allegations even assert that iBus Media has any presence in the United States other than its news website. (*See generally* Compl. (#1) at ¶¶ 7–14). Jurisdictional allegations that are limited to the defendants operation of a website fail to confer general

---

[3] Best Odds makes an eighth allegation relating to personal jurisdiction (*see* Compl. (#1) at ¶ 13), but it merely repeats without further elaboration its prior allegation that iBus Media should be subject to personal jurisdiction because it committed wrongful acts. (*See id.* at ¶ 8).

jurisdiction as a matter of law. *CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066, 1074–76 (9th Cir. 2011) (concluding that general jurisdiction was lacking in California over company which operated several websites, specifically targeted California customers, and registered hundreds of California users); *Illinois v. Hemi Group LLC*, 622 F.3d 754, 760 (7th Cir. 2010) (find that general jurisdiction did not exist where a company used multiple interactive websites to market cigarettes that were sold and shipped to in forum consumers); *but see Gator.com Corp. v. L.L. Bean, Inc*., 341 F.3d 1072, 1074–80 (9th Cir. 2003) (concluding that L.L. Bean was subject to general jurisdiction in California where company targeted extensive, sophisticated electronic advertising, sold millions of dollars' worth of merchandise annually to California customers by Internet and telephone, and maintained ongoing contacts with multiple California vendors); *Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, No. 03–Civ–1681(LAP), 2004 WL 2199547, at *7 (S.D.N.Y. Sept. 29, 2004) (holding that an interactive website allowing clients to bank online was insufficient to confer general jurisdiction over a foreign bank).

Therefore, the court's preliminary peek at iBus Media's motion to dismiss "convinces" the court that it does not have general jurisdiction over iBus Media in this action.

## III.     The Court Lacks Specific Jurisdiction over Defendants

Having determined that the court lacks general jurisdiction over iBus Media, the court now considers whether it has specific jurisdiction over iBus Media. For the reasons discussed below, the court concludes that it does not have specific jurisdiction over iBus Media. The court's analysis proceeds in two parts: (1) a finding that the court lacks specific jurisdiction and (2) a discussion of Best Odds' arguments in opposition. Both are discussed below.

8

### A.    *The Court Lacks Specific Jurisdiction*

Courts apply a three-part test to determine whether it may exercise specific jurisdiction over a nonresident defendant: (1) the nonresident defendant must purposefully direct its activities at the forum state or consummate some transaction within the forum state; (2) the claim must arise out of or relate to defendant's forum related activities; and (3) the exercise of jurisdiction must be reasonable comporting with fair play and substantial justice. *See Schwarzenegger*, 374 F.3d at 802.

In the context of a trademark infringement action, the Ninth Circuit has held that when the operator of a passive website[4] conducted no act in the forum state other than the use of the trademark, the court would not exercise specific jurisdiction because doing so would result in "every complaint arising out of alleged trademark infringement" automatically resulting "in personal jurisdiction wherever the plaintiff's principal place of business is located." *Cybersell, Inc. v. Cybersell, Inc*., 130 F .3d 414, 420 (9th Cir. 1997).

Best Odds' action is factually analogous to *Cybersell*. In *Cybersell*, the plaintiff relied on the fact that the defendant operated a website accessible in the forum state, which allegedly contained infringing trademarks. *Id*. at 416. The defendant's website advertised its services but did not allow parties to transact business via the site:

---

[4] The *Cybersell* adopted the distinction between "passive" and "active" websites that was articulated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997):

> [Whether] personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well-developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction.

*Id*. (internal citations omitted).

9

> As part of their marketing effort, the Certos created a web page at http://www.cybsell.com/ cybsell/index.htm. The home page has a logo at the top with "CyberSell" over a depiction of the planet earth, with the caption underneath "Professional Services for the World Wide Web" and a local (area code 407) phone number. It proclaims in large letters "Welcome to CyberSell!" A hypertext link allows the browser to introduce himself, and invites a company not on the web-but interested in getting on the web-to "Email us to find out how!"

*Id.* at 415–16. Noting the lack of interactivity on the defendant's website, the court concluded that the defendant had "done no act and [ ] consummated no transaction, nor has it performed any act by which it purposefully availed itself of the privilege of conducting activities, in [the forum], thereby invoking the benefits and protections of [forum] law." *Id.*

Applying *Cybersell* and *Zippo*'s sliding scale analysis to the facts of this case, the court's preliminary peek "convinces" the court that it does not have specific jurisdiction over iBus Media. The bulk of Best Odds' jurisdictional allegations contend that iBus Media's website is "passive" because the website only provides news. (*See generally* Compl. (#1) at ¶¶ 7–14). These allegations are the hallmark of passive websites that fail to confer personal jurisdiction as matter of law. *See Cybersell, Inc.*, 130 F .3d at 420; *Zippo Mfg. Co.*, 952 F. Supp. at 1124.

At first glance, Best Odds' complaint contains jurisdictional allegations that iBus Media's website could be active. These allegations are that iBus Media (1) has "significant U.S. presence" and (2) provides "functionality by which site users may make hotel and other travel reservations in the United States." (*See* Compl. (#1) at ¶¶ 9, 12). Neither of these allegations withstand scrutiny. The first contention—(*viz.*, that has "significant U.S. presence")—appears to be a marketing ploy. Best Odds took this statement from an iBus Media "media kit." The media kit contains no facts to support a finding of specific jurisdiction. In full, the statement reads:

> While the global site has the largest traffic reach, **with significant U.S. presence**, *PokerNews* is an international force with over 30 sub-domains, each with localized language and content. *PokerNews* sub-domains generate large traffic profiles of their own as demonstrated by NL.PokerNews.com, our site in the Netherlands.

(*Id*.); (*see also* Compl. (#1) at ¶ 9) (citing Exhibit 1 at 4) (emphasis added). Although the statement appears to be a marketing ploy, Best Odds proffers the statement for a legal conclusion: namely, that personal jurisdiction exists because "a significant U.S. presence" satisfies the minimum contacts inquiry. However, Best Odds does not offer any facts, other than one statement from a media kit, showing that iBus Media actually has sufficient minimum contacts in the forum.[5]

The court is also unpersuaded by Best Odds' allegation that personal jurisdiction exists because the website provides "functionality by which site users may make hotel and other travel reservations in the United States." (*See* Compl. (#1) at ¶ 12). This allegation is not supported by the exhibits appended to Best Odd's complaint. (*See generally id*.) Even if the allegation were supported by evidence, it is not clear that this allegation would confer personal jurisdiction over iBus Media. Best Odds does not allege that iBus Media's website is used to make hotel accommodations and travel reservations. Its primary allegation is that the website is a news source. The allegation relating the "other travel reservations in the United States" merely asserts that the website contains some "functionality by which site users" may make reservations. (*Id*. at ¶ 12). This creates the impression that iBus Media's website contains a link to external travel websites, and not that the website is used to book reservations.

---

[5] Best Odds's opposition argues that the court would have jurisdiction if one of iBus Media's reporters committed a tort in Nevada. (*See* Pl.'s Opp'n (#19) at 6:24–27). The court notes for the record Best Odds presented no evidence or factual allegations that iBus Media stations reporters in Nevada. In fact, the plain language of Best Odds' opposition appears to concede that iBus Media does not, in fact, have reporters in the United States. Best Odds' arguments are entirely speculative. Best Odds argues, "**If** Defendants **actually** arrange for news reporting of the World Series of Poker—which, **if** 'live,' **presumably** is undertaken in person in Las Vegas—Defendants are unquestionably availing themselves of the benefits of Nevada's laws . . . Certainly, **if**, . . . ." (*Id*. at 7:11–14) (emphasis added). The court cannot predicate personal jurisdiction on hypotheticals. *See*, *e.g.*, *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1223 (9th Cir. 2011) (stating that the court must accept the complaint's allegations as true and consider evidence from affidavits when determining whether personal jurisdiction exists).

### B.       *Best Odds' Arguments in Opposition are Unpersuasive*

Having determined that Best Odds' factual allegations do not support a finding of specific jurisdiction, the court briefly addresses the arguments Best Odds' proffered in opposition to the motion to dismiss. Best Odds argues that jurisdiction exists because (1) Rule 4(k)(2) confers personal jurisdiction over iBus Media, (2) iBus Media mistakenly focuses its alleged minimum contacts with Nevada, not the United States; (3) the Lanham Acts confers jurisdiction; (4) iBus Media is not subject to any state court of general jurisdiction; and (5) iBus Media should be subjected to personal jurisdiction because the court would have jurisdiction if iBus Media committed a tort in Nevada. These arguments are unpersuasive.

First, Rule 4(k)(2) governs the territorial limits of effective service, not personal jurisdiction. *See* FED. R. CIV. P. 4(k)(2). It does not provide a shortcut around the court's limited powers of jurisdiction. Under Rule 4(k)(2), the defendant must still have sufficient minimum contacts with the United States. *See* FED. R. CIV. P. 4(k)(2), Advisory Comm. Notes, 1993 Amends. As explained by the Ninth Circuit, "[t]he due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] entities and the forum state, we consider contacts with the nation as a whole." *Holland Am. Line Inc. v. Wartsila N. Am., Inc*., 485 F.3d 450, 462 (9th Cir. 2007) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)).

Second, whether or not iBus Media's motion to dismiss mistakenly focuses on its minimum contacts with Nevada or the United States is inapposite. As discussed above, iBus Media does not have sufficient minimum contacts with the United States or Nevada. The factual allegations of Best Odds' complaint establish that iBus Media's website is a passive website used for news. (*See generally* Compl. (#1) at ¶¶ 7–14). Passive websites do not support a finding of specific jurisdiction. *See Cybersell, Inc*.,

130 F .3d at 420; *Zippo Mfg. Co.*, 952 F. Supp. at 1124.

Third, although the Lanham Act confers subject matter jurisdiction, it does not create personal jurisdiction.

Fourth, for purposes of the court's personal jurisdiction inquiry, it is not relevant whether iBus Media is subject to jurisdiction in any court of general jurisdiction in the United States. *See Schwarzenegger*, 374 F.3d at 802. Rather, the relevant inquiry considers whether the defendant has minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316; *Schwarzenegger*, 374 F.3d at 802.

Finally, Best Odds argues that iBus Media should be subjected to personal jurisdiction because the court would have personal jurisdiction over iBus Media if one of its reporters committed a tort in Nevada. (*See* Pl.'s Opp'n (#19) at 6:24–27). Assuming, *arguendo*, that (1) iBus Media stationed reporters in Nevada and (2) an iBus-Media reporters tortuously harmed someone in Nevada, then the court would theoretically have personal jurisdiction over the reporter. However, this argument fails in this case because (1) Best Odds presented no evidence or factual allegations that iBus Media stations reporters in Nevada and (2) no tort has allegedly been committed. (*See supra* n. 5) (stating that the court cannot predicate personal jurisdiction on speculation).

Therefore, the court's preliminary peek at iBus Media's motion to dismiss "convinces" the court that it does not have general jurisdiction over iBus Media in this action.

## IV.    A Discovery Stay is Appropriate in the Absence of Personal Jurisdiction

Federal courts are courts of limited jurisdiction. *See* U.S. CONST. art. III § 2. The burden of proving jurisdiction rests on the party asserting jurisdiction, *see McNutt*, 298 U.S. at 182–83, and, if a doubt exists, courts are to presume that they lack jurisdiction. *Turner*, 4 U.S. at 11. Here, no personal

jurisdiction exists. Consequently, the court cannot entertain Best Odd's request for relief. *Id*. Therefore, because the court is "convinced" that iBus Media's motion to dismiss will be granted on personal jurisdiction grounds, the court (1) refrains from addressing iBus Media's alternative arguments in the interest of judicial economy and speed, *see* FED. R. CIV. P. 1, and (2) orders a stay of discovery until iBus Media's motion to dismiss is adjudicated.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that iBus Media Limited's motion to stay (#31) is GRANTED.

IT IS FURTHER ORDERED that discovery is STAYED for four months or until the District Court adjudicates iBus Media's motion to dismiss, whichever occurs first.

IT IS FURTHER ORDERED that, in the event iBus Media Limited's motion to is denied, the parties MUST file a proposed Discovery Plan and Scheduling Order within twenty days of the court's decision.

IT IS FURTHER ORDERED that a STATUS CONFERENCE is set for August 29, 2014, at 10:00 a.m. in courtroom 3D.

IT IS SO ORDERED.

DATED this 9th day of May, 2014.


_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

14