UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| BEST ODDS CORP., <br><br>   Plaintiff, <br><br> vs. <br><br> IBUS MEDIA LIMITED, a foreign company; <br> IBUS MEDIA HOLDINGS (IOM) LIMITED, <br> a foreign company, <br><br>   Defendants. | 2:13-cv-02008-RCJ-VCF <br><br> **ORDER** |

This trademark infringement action arises under the Lanham Trademark Act of 1946, 15 U.S.C. § 1114. Defendants have moved to dismiss for lack of personal jurisdiction and for failure to state a claim. (ECF No. 13). For the reasons stated herein, the Court concludes that it lacks personal jurisdiction over Defendants. Accordingly, the Court need not address Defendants' Rule 12(b)(6) arguments, and the case is dismissed.

**I.   BACKGROUND**

This is a case between the operators of two poker websites. Plaintiff Best Odds Corp. is a Nevada corporation that provides "news and information via a global computer network in the field of gaming." (Compl. ¶ 17, ECF No. 1). Defendants iBus Media and iBus Media Holdings (collectively, "Defendants") are Isle of Man corporations that provide "news and information via a global computer network in the field of gaming." (*Id*. at ¶ 20). Both Plaintiff and Defendants use the MacPoker® trademark in connection with their respective websites. (*Id*. at ¶¶ 21–22). The mark, however, is registered to Plaintiff. (*Id*. at ¶ 18; USPTO Registration, ECF No. 1-2).

On October 29, 2013, Plaintiff filed the instant action, claiming trademark infringement under the Lanham Act and "misappropriation of commercial properties" under Nevada common law. (Compl., ECF No. 1). On January 21, 2014, Defendants moved to dismiss for lack of personal jurisdiction and failure to state a claim for which relief can be granted. (ECF No. 13). The Court now considers the pending motion.

## II.   LEGAL STANDARDS

A defendant may move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Personal jurisdiction exists if: (1) provided for by law; and (2) the exercise of jurisdiction comports with due process. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir. 1980). When no federal statute governs personal jurisdiction, a federal court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as in Nevada, the forum state's long-arm statute provides for personal jurisdiction to the fullest extent of the Due Process Clause of the Fourteenth Amendment, *see Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065), a court need only apply federal due process standards, *see Boschetto*, 539 F.3d at 1015.

There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction.  General jurisdiction exists over a defendant who has "substantial" or "continuous and systematic" contacts with the forum state such that the assertion of personal jurisdiction over him is constitutionally fair even where the claims are unrelated to those contacts. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U .S. 408, 415 (1984)).  The Supreme Court recently clarified that the reach of general jurisdiction is narrower than had been supposed in the lower courts for many years. *See Daimler AG v. Bauman*, 134 S. Ct. 746, at 755 (2014) (citing *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 131 S. Ct. 2836, 2851 (2011)) (noting that general jurisdiction lies not simply where a defendant has continuous and systematic contacts with the forum state, but where those contacts are so pervasive as to render the defendant "essentially at home" in the forum State).

Even where there is no general jurisdiction over a defendant, specific jurisdiction exists when there are sufficient minimum contacts with the forum state such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The standard has been refined through a long line of cases. *See, e.g.*, *Hanson v. Denckla*, 357 U .S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (citing *Int'l Shoe Co.*, 326 U.S. at 319)); *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (citing *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 97–98 (1978))). From these cases and others, the Ninth Circuit has developed a three-part test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

> The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.

*Id.* (citations omitted). The "purposeful direction" option of the first prong uses the "*Calder*-effects" test, under which "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). The third prong of the specific jurisdiction test is itself a seven-factor balancing test, under which a court considers:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 107, 1112 (9th Cir. 2004)).

Finally, pursuant to Federal Rule of Civil Procedure 4(k)(2), known as the federal long-arm statute, a plaintiff can, in limited circumstances, establish personal jurisdiction based on the defendant's aggregate contacts with the United States as a whole. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006). To exercise Rule 4(k)(2) jurisdiction, a court must conclude that three requirements are satisfied: (1) plaintiff's cause of action arises under federal law; (2)

the defendant is not subject to personal jurisdiction in any state court of general jurisdiction; and (3) the exercise of personal jurisdiction over the defendant would comport with due process. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002). "Thus, the rule provides for what amounts to a federal long-arm statute in a narrow band of cases in which the United States serves as the relevant forum for a minimum contacts analysis." *Id.* "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendants] and the forum state, [courts] consider contacts with the nation as a whole." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007); *Pebble Beach*, 453 F.3d at 1159 ("The due process analysis is identical to the one discussed above when the forum was California, except here the relevant forum is the entire United States.").

### III.   ANALYSIS

Plaintiff's primary argument for a finding of personal jurisdiction is predicated on Defendants' alleged admission that they have a "significant U.S. presence." (Opp'n Mot. Dismiss, ECF No. 19, at 6 (citing Media Kit, ECF No. 1-1, at 5); *see also* Compl. ¶ 9, ECF No. 1). The cited media kit in which this alleged admission appears states:

> While the global site has the largest traffic reach, *with significant U.S. presence*, *PokerNews* is an international force with over 30 sub-domains, each with localized language and content. *PokerNews* sub-domains generate large traffic profiles of their own as demonstrated by NL.PokerNews.com, our site in the Netherlands.

(Media Kit, ECF No. 1-1, at 5 (emphasis added)). According to Plaintiff, this Court has personal jurisdiction under Rule 4(k)(2) as a result of Defendants' alleged contacts with the United States. (*See* Opp'n Mot. Dismiss, ECF No. 19, at 4). However, Plaintiff also appears to invoke jurisdiction based on Defendants' alleged contacts with Nevada. (*Id.* at 7). Therefore, the Court will evaluate Defendants' alleged contacts with respect to both forums.

Plaintiff further asserts that Defendants are subject to this Court's jurisdiction because: (1) "Defendants, competitors of Plaintiff, engaged in wrongful conduct . . . targeted at Plaintiff, whom Defendants knew to be a resident of the United States," (Compl. ¶ 8, ECF No. 1); (2) "Defendants provide news coverage of gaming-related events in the United States, such as the World Series of Poker, with such coverage directed to a United States-based audience," (*id*. ¶ 10); (3) "Defendants are 'official live [news] coverage partners' of United States-based operators of gaming-related events," (*id*. ¶ 11 (citing Media Kit, ECF No. 1-1));[1] (4) "Defendants provide on . . . pokernews.com functionality by which site users may make hotel and other travel reservations in the United States," (*id*. ¶ 12); (5) Defendants committed "wrongful acts with the knowledge that Plaintiff is a resident of the United States and would suffer any [resulting] injuries . . . in the United States," (*id.* ¶ 13); (6) "Defendants, who are both foreign entities, are not subject to jurisdiction in courts of general jurisdiction of any state of the United States," (*id*. ¶ 14).

However, the exhibits Plaintiff has attached to its complaint provide little support for the majority of these allegations. The first exhibit is the aforementioned media kit, (ECF No. 1-1), which, in addition to the language quoted above, includes (1) a screenshot of a website named "PokerNews" showing photos from and links to poker-related news articles; (2) a description of the website's purpose: "PokerNews connects the poker community and promotes the positive advancement of poker worldwide"; (3) an analysis of PokerNews.com's web traffic; and (4) what appears to be a list of the thirty countries included in the website's "global network." (*Id*.). The second exhibit is Plaintiff's USPTO registration certificate. (*See* ECF No. 1-2). The third

---

[1] The Court notes that after a thorough review of the cited media kit, it is unable to find the language quoted in this allegation. Indeed, the Court can find nothing in the media kit that even remotely suggests that Defendants are the "'official live [news] coverage partner' of U.S.-based Operators of gaming-related events such as the World Series of Poker."

exhibit is another screenshot from the PokerNews website. (*See* ECF No. 1-3). Specifically, the screenshot appears to show a PokerNews page accessed from a website titled MacPoker. (*Id.*). This page appears to: (1) aggregate social media postings from professional poker players and commentators; and (2) provide links to poker-related news stories. It also includes the following paragraph:

> Although most Mac users would argue that their machine is superior (and they are probably right), surprisingly not all poker rooms offer poker for Macintosh users. However, we have taken the time to assemble a list of the poker rooms that currently support poker on your Mac. We have also given an overall rating to each of these rooms to make your choice easier, but if you would like further information then read the reviews associated with each room. Over time we expect Mac Poker to pick up to the stage where most of the rooms will realize the error of their ways and support the Mac.

(*Id.* at 4). The screenshot also appears to show links to fifteen Macintosh-compatible "online poker rooms." Many of these links are listed with bonus offers and promotional codes allowing users to obtain such offers. The text presented with these links indicates that at least five, and perhaps more, of the linked poker rooms accept the U.S. dollar. (*Id.* at 5–9). However, some of the poker rooms appear to use the euro. (*Id.*). The fourth exhibit is a screenshot of the allegedly infringing MacPoker website. (ECF No. 1-4). This screenshot shows: (1) a paragraph describing MacPoker's purpose: "Mac poker is dedicated to online poker rooms that support the macintosh [*sic*] operating system. Here you will find Mac Poker reviews and listings that help you chose [*sic*] the best place to play online poker on a mac," (*id.* at 3); and (2) links to, and ratings for, eleven Macintosh-compatible poker rooms, (*id.* at 3–9). The fifth, and final, exhibit is another screenshot of Defendants' MacPoker website. (ECF No. 1-5). In addition to another iteration of the website's purpose, (*id.* at 2), this screenshot shows links to twelve Macintosh-compatible poker rooms, each of which are listed elsewhere in Plaintiff's

exhibits. Importantly, however, the words "**Not Accepting US Players**" appear next to each link shown on this screenshot. (*Id.* 1–5 (emphasis added)).

Relying on these allegations and exhibits alone, Plaintiff has failed to make a prima facie showing that this Court has general or specific jurisdiction over Defendants, and dismissal is therefore appropriate, *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 671–72 (9th Cir. 2012) ("Although the burden is on the plaintiff to show that the court has jurisdiction over the defendant, in the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." (internal quotation marks omitted)).

### A.  General Jurisdiction

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG*, 134 S. Ct. at 760 (internal citations and quotation marks omitted) (quoting *Goodyear*, 131 S. Ct. at 2853–54). Nothing in the record supports an inference that Defendants have engaged in continuous and systematic contacts with Nevada such that they are "essentially at home" in the forum. Therefore, the Court cannot conclude that general jurisdiction exists.

Likewise, to the extent that Plaintiff contends that the Court has general jurisdiction under Rule 4(k)(2) based on the "significant U.S. presence" described in Defendants' media kit, (*see* Opp'n Mot. Dismiss, ECF No. 19, at 6), the Court disagrees. As an initial matter, the media kit does not suggest that Defendants can be "fairly regarded as at home" in the United States. Instead, it states "PokerNews is a Global Brand[.] While the global site has the largest traffic

reach, with significant U.S. presence, PokerNews is an international force with over 30 sub-domains, each with localized language and content." (*Id.*). More importantly, however, under the "at home" standard reiterated in *Daimler AG*, it is unlikely that a court could ever find general jurisdiction under Rule 4(k)(2). Indeed, a finding that a corporate defendant "is fairly regarded as at home" within the United States would seemingly preclude a finding that the same corporate "defendant is not subject to jurisdiction in any state's courts of general jurisdiction," as is required under Rule 4(k)(2)(A).

### B. Specific Jurisdiction

Where, as here, general jurisdiction does not exist, the Court must ask whether the "nature and quality" of Defendants' contacts with the forum are sufficient to justify the exercise of specific jurisdiction. *Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977). Specifically, the three-prong test applied by the Ninth Circuit to determine specific jurisdiction over non-resident defendants requires the Court to ask whether (1) Defendants purposefully directed their activities at the forum or performed some act by which they purposefully availed themselves of the privilege of conducting activities in the forum; (2) Plaintiff's claims arise out of these forum-related activities; and (3) the exercise of specific jurisdiction over Defendants is reasonable. *Boschetto*, 539 F.3d at 1016. In this case, however, an analysis of the first prong reveals that the Court lacks specific jurisdiction. Therefore, the Court need not address prongs two and three.

The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment. *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). In cases involving allegations of tortious conduct, such as trademark infringement and misappropriation, the Ninth Circuit focuses on "purposeful direction," applying the "*Calder*

effects" test. *Id.* ("Because [plaintiff] has alleged copyright infringement, a tort-like cause of action, purposeful direction 'is the proper analytical framework.'") (quoting *Yahoo!*, 433 F.3d at 1206); *Facebook, Inc. v. Pedersen*, 868 F. Supp. 2d 953, 958 (N.D. Cal. 2012) ("The Court finds that the *Calder* effects test is the proper framework for analyzing the exercise of specific personal jurisdiction over defendants, because [the plaintiff] alleges trademark dilution and infringement, both of which are tort-like causes of action."). Under the *Calder* test, purposeful direction exists when the defendant (1) commits an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Brayton Purcell*, 606 F.3d at 1128. In this case, Plaintiff has failed to establish the second *Calder* element and has therefore failed to satisfy the purposeful-direction prong of the Ninth Circuit's test for specific personal jurisdiction.

**(1) Intentional Act**

In the instant case, the parties do not dispute that the "intentional act" element is satisfied. The Court agrees. Indeed, it is well-established that the creation and operation of a website constitutes an intentional act in this context. *Id.*

**(2) Express Aiming**

The express aiming element of the *Calder* effects test is satisfied when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Whether tortious conduct on a widely accessible website is expressly aimed at a particular forum is an evolving legal question with which courts continue to wrestle. *See Mavrix*, 647 F.3d at 1229 (collecting cases). Many courts have employed some version of the *Zippo* sliding scale[2]

---

[2]*See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).

to characterize the nature and quality of the defendant's internet activity. *See, e.g.*, *Id.* at 1226–27, 29; *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418–19 (9th Cir. 1997). At one end of the *Zippo* scale are "passive" websites, on which a defendant simply posts information that individuals in the forum state may access, and which "do not support jurisdiction." *Mavrix*, 647 F.3d at 1226–27, 1229. At the other end are "active" websites "where a defendant clearly does business over the Internet and enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, which support jurisdiction." *Id.* (internal citations omitted) (citing *Zippo*, 952 F. Supp. at 1124).

Adopting *Zippo*'s general framework, the Ninth Circuit has elaborated that a passive website alone, without "something more," cannot satisfy the express aiming prong. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019–21 (9th Cir. 2002). Courts may consider a variety of factors in deciding whether a defendant has done "something more," including the interactivity of the website, the geographical breadth of the website's commercial reach, and whether the defendant "individually targeted" forum residents through the website. *See, e.g.*, *Mavrix*, 647 F.3d at 1230 (concluding based on the subject matter of defendant's celebrity-focused website, as well as the size and commercial value of the California market, that defendant "anticipated, desired, and achieved" a substantial California audience, in satisfaction of the "something more" requirement); *Rio Props.*, 284 F.3d 1007, 1020 (9th Cir. 2002) (finding "something more" where defendant ran a for-profit marketing campaign in the forum and purposefully operated a website whose content infringed plaintiff's trademarks); *Pebble Beach*, 453 F.3d at 1158 (concluding that the "foreseeable effect" of harm in California was not sufficient to establish "something more" where the defendant operated a non-interactive website,

and the plaintiff failed to allege conduct that could be construed as "expressly aimed at California").

There is little doubt that Defendants' website is more than simply passive. Specifically, by providing immediate access to Macintosh-compatible poker rooms and poker-related news content, the site includes more than mere "information." However, the scope of Defendants' commercial ambition appears limited; nothing in the record suggests that the website is used to "enter into contracts with [forum residents] that involve the knowing and repeated transmission of computer files over the Internet." *See Mavrix*, 647 F.3d at 1226. While Plaintiff complains that "Defendants provide on, without limitation, pokernews.com functionality by which site users may make hotel and other travel reservations in the United States," (Compl. ¶ 12, ECF No. 1), this allegation is contradicted by Plaintiff's own exhibits, which show nothing of the sort, (*see generally id.*). Furthermore, the Court is careful to note that Plaintiff has not alleged that Defendants' allegedly infringing website is actually used to make travel reservations. (*See* Compl. ¶¶ 8–12, ECF No. 1). Instead, Plaintiff implies that the website, which is primarily characterized as a news source, includes links to external travel websites. (*Id.*). Accordingly, Defendants' website appears to fall somewhere in the middle of the *Zippo* sliding scale. Therefore, the relevant question is whether the website's interactive features, including the links to external websites, constitute the "something more" sufficient to establish that Defendants expressly targeted the forum.

Nothing in the interactive features depicted in Plaintiff's exhibits indicates that Defendants expressly targeted citizens of the United States, let alone Nevadans. In fact, one of the five screenshots shows only links to poker rooms that are "Not Accepting US Players," (Screenshot, ECF No. 1-5, at 1–5). This is the opposite of "express aiming." Of course, the other

linked poker rooms may be available to U.S. players, and this may render harm in the United States foreseeable. However, mere foreseeability of harm is insufficient to establish personal jurisdiction. *Pebble Beach*, 453 F.3d at 1158 (9th Cir. 2006) ("[T]here can be no doubt that we still require "something more" than just a foreseeable effect to conclude that personal jurisdiction is proper."). Indeed, the Supreme Court has long held that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987).

      Here, Plaintiff's own exhibits demonstrate that Defendants operate a "global network," accessible in over thirty countries, "with over 30 sub-domains, each with localized language and content." (*See* Media Kit, ECF No. 1-1, at 5–6). Yet, neither the pleadings nor the exhibits suggest that any of the linked poker rooms are uniquely aimed at U.S. citizens, let alone Nevadans, rather than the "global network" as a whole. Therefore, the Court cannot conclude that the linked poker rooms support a finding of purposeful direction.

      Likewise, nothing with respect to the news links suggests geographical or individual targeting. Again, it may have been foreseeable that U.S. residents would access this material, which allegedly includes coverage of the World Series of Poker, but Plaintiff has conspicuously recited only conclusory allegations of express targeting. (*See* Compl. ¶ 10, ECF No. 1 ("Defendants provide news coverage of gaming-related events in the United States, such as the World Series of Poker, with such coverage directed to a United States-based audience.")). These allegations are insufficient to establish a prima facie showing of personal jurisdiction. *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("[C]onclusory allegations that '[defendants]

directed communication into the U.S. Western District of Washington and otherwise conducted business therein sufficient to establish minimum contacts within the forum that support the exercise of jurisdiction over their persons by this Court' are insufficient to establish a prima facie showing of personal jurisdiction."). Moreover, these news links fall at the passive end of the *Zippo* sliding scale: While they do provide some interactive redirection, their essential function is to connect users with informative content that appears to lack any transactional component. Accordingly, such links do not support a finding of purposeful direction.

Finally, to the extent that Plaintiff contends that the Court should exercise personal jurisdiction because it would have such jurisdiction if (1) Defendants actually stationed news reporters in Nevada and (2) one of these hypothetical reporters tortuously harmed a Nevadan, (*see* Opp'n Mot. Dismiss, ECF No. 19, at 6), the Court disagrees. While it is certainly true that such facts, if actually alleged, could theoretically support a finding of purposeful availment, they are not alleged in the complaint, (*see generally* Compl., ECF No. 1); they are purely hypothetical. Indeed, Plaintiff's phrasing of this argument makes clear that it is based entirely on speculation. (*See* Opp'n Mot. Dismiss, ECF No. 19, at 6).[3] Such speculation is plainly insufficient to support a finding of personal jurisdiction. Accordingly, Plaintiff has failed to

---

[3] Specifically, Plaintiff argues:

> As Plaintiff has pled and supported, Defendants provide "live coverage" of the Nevada-based World Series of Poker, and it would not be unreasonable for this Court to find this fact sufficient in itself to subject Defendants to general personal jurisdiction in this case. If Defendants actually arrange for news reporting of the World Series of Poker—which, if "live," presumably is undertaken in person in Las Vegas—Defendants are unquestionably availing themselves of the benefits of Nevada's laws to an extent warranting the exercise of personal jurisdiction. Certainly, if, *e.g.*, Defendants' World Series of Poker reporter engaged in defamatory conduct in the course of reporting on that tournament, Defendants would be hard-pressed to deny that they were subject to jurisdiction in Nevada with respect to that claim.

make a prima facie showing that Defendants have purposefully directed their activities towards the United States or Nevada or that Defendants have purposefully availed themselves of the forums' laws. Therefore, the Court cannot conclude that it has jurisdiction over Defendants, and their motion to dismiss must be granted.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' motion to dismiss (ECF No. 13) is GRANTED. The Court dismisses this case for lack of personal jurisdiction over Defendants, and the Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.

Dated this 4th day of June, 2014.

_____
ROBERT C. JONES
United States District Judge